IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                *
CDC-LCGH, LLC,
                                *
      Plaintiff,
                                *
v.                                      CIVIL NO.: WDQ-06-2235
                                *
MAYOR AND CITY COUNCIL OF
BALTIMORE,                      *

      Defendant.                *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

CDC-LCGH, LLC ("CDC"), has sued the Mayor and City Council of Baltimore (the "City") for breach of contract, unjust enrichment, promissory estoppel, fraud in the inducement, fraud by concealment, and negligent misrepresentation.  Pending is the City's motion to dismiss, or, in the alternative, for summary judgment on all counts.  For the following reasons, the motion will be granted in part and denied in part.


I.  Background

CDC is a Delaware limited liability company in the business of restoring and preserving historic properties.  Am. Compl. ¶ 5. In 2001, CDC became interested in purchasing and restoring the Gatehouse, an historic City-owned building located at 2803 St. Lo Drive in Baltimore City's Clifton Park, for use as its business headquarters.  Id. ¶¶ 10, 14.  The Gatehouse, "an impressive

1

eight-sided Gothic revival stone and tile-roofed structure," was built in the 1880s to house valves for the Lake Clifton Reservoir, but for the past 50 years has been unused and become dilapidated. *Id*. ¶ 10. CDC began negotiations with the City to purchase and restore the Gatehouse for use as its office as part of a multi-purpose neighborhood center ("Multi-Purpose Center").[1] *Id*. ¶ 10, 14. During negotiation, it was determined that a sale of a building in a public park was inappropriate, but a long-term lease of the Gatehouse was possible. *Id*. ¶ 15.

After further negotiation, CDC and the City, represented by the City Comptroller and representatives of the City's Department of Recreation and Parks (the "Parks Department"), Board of Estimates, and Solicitor, entered into a lease on August 21, 2002. *Id*. ¶¶ 15-23; Compl. Ex. 1 (the "Lease"). The term of the Lease is divided into two periods: a three-year Initial Term, and a 47-year Extension Term. Lease §§ 4, 5. The Initial Term provided a period for the "review, design and structural 'Study' of the leased premises," during which the Lessee, CDC, had the opportunity to perform a specific list of necessary conditions for the Lease to continue into the Extension Term, including

---

[1] Baltimore City's zoning code defines a "Multi-purpose neighborhood center" as "a building or a group of buildings used, in whole or in part, for 2 or more governmental or community services, such as health, day care, recreation, legal aid, social services, education, and employment counseling." Balt., Md. Zoning Code tit. 1, § 1-163(a) (Nov. 20, 2006).

2

providing adequate evidence of project funding, and approval by the City's Board of Municipal and Zoning Appeals (the "Zoning Board").  *Id.* §§ 2(A), 4, 5(A).   If extended, "the leased premises [would] be used *as office space* by the Lessee."  *Id*. § 2(C) (emphasis added).

CDC alleges that it performed all the necessary requirements for the Extension Term, except obtaining Zoning Board approval to use the Gatehouse as "office space."  Am. Compl. ¶ 48-57.  The Zoning Board would not permit the Gatehouse to be used as an office, or even as a Multi-Purpose Center so long as the Lease required only office use; the City refused to modify the Lease to permit Multi-Purpose-Center use.  *Id*.

On August 9, 2005, the City's Office of the Comptroller notified CDC that the Lease would automatically terminate on August 20 if CDC did not: (1) produce adequate or acceptable evidence of funding for the project; and (2) obtain Zoning Board approval.  *Id*. ¶ 64; Compl. Ex. 23.  On August 29, the City notified CDC that the Lease was terminated because the terms for continuing the Lease into the Extension Term had not been satisfied.  Am. Compl. ¶ 69; Compl. Ex. 26.

II.  Discussion

A.  Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and any incorporated documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).  The court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.


B.  Analysis

1.  Breach of Contract (Count I)

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."

4

*Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).

CDC claims that the City breached the Lease by wrongfully terminating it in its August 29, 2005 letter.  Am. Compl. ¶¶ 69, 78; Compl. Ex. 26.  The City argues that the Lease terminated by its own terms when CDC failed to perform two necessary conditions for the extension of the Lease beyond its Initial Term.  Lease § 3(A).  First, Lease § 4(C) requires:

> Lessee must prove and show evidence of funds to complete this project to the Lessor.  Should the information provided not be adequate or acceptable to Lessor, the Lease will terminate at the end of the Initial Term.

Second, § 4(E) requires in part:

> Lessee must acquire approval from the Board of Municipal and Zoning Appeals.

Finally, § 4(J) provides:

> At the end of the Initial Term, should the Lessee have been unsuccessful in obtaining and furnishing the Lessor with all necessary approvals required of the "Study", this Lease Agreement will terminate.

The City argues that the Initial Term expired before CDC: (1) provided adequate and acceptable evidence of funding as required by § 4(C); and (2) obtained approval from the Zoning Board of its proposed use for the Gatehouse as required by § 4(E).  Consequently, the Lease expired when the Initial Term ended on August 21, 2005.

CDC proffers a letter from the City's acting Real Estate Officer stating that the "evidence of funds . . . to complete the project . . .. is deemed to be adequate and acceptable."  Compl.

Ex 7.  Although this is enough for a fact-finder to find that CDC fulfilled the requirement of § 4(C), there remains CDC's admitted failure to obtain Zoning Board approval as required by § 4(E).

CDC alleges that, despite its best efforts to do so, it was unable to fulfill the condition of § 4(E) because of the City's bad faith.  It also alleges that the City failed to give it the necessary notice and opportunity to cure required under § 17 of the Lease.

a.  The Implied Covenant of Good Faith and Fair Dealing

CDC alleges that the City breached its implied covenant of good faith and fair dealing under the Lease by "engag[ing] in repeated efforts to frustrate and thwart CDC's efforts" to gain Zoning Board approval.  Resp. 23.

Every contract in Maryland includes an implied covenant of good faith and fair dealing.  *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 534 (1964); *Julian v. Christopher*, 320 Md. 1, 9 (1990) (implied covenant exists in leases); *Port E. Transfer, Inc. v. Liberty Mut. Ins. Co.,* 330 Md. 376, 385 (1993) ("Even when the parties are silent on the issue, the law will impose an implied promise of good faith.").  "It is well settled that, where cooperation is necessary to the performance of a condition, a duty to cooperate will be implied, and that a party owing such a duty cannot prevail if such failure operates to hinder or

prevent performance of the condition." *Alois v. Waldman,* 219 Md. 369, 375 (1959); *see also Funger v. Mayor and Council of Town of Somerset,* 249 Md. 311, 331-32 (1968) (applying the rule to municipalities).  Although the duty of good faith and fair dealing "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract[,] . . . it does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]." *Parker v. Columbia Bank,* 91 Md. App. 346, 366 (Md. Ct. Spec. App. 1992).

CDC avers that "the City created a catch 22[,] first by insisting in the Lease that the Gatehouse be used for office space, and then later by hiding behind zoning restrictions to preclude use of [the] Gatehouse as an office." *Id.*  More specifically, CDC alleges that the City "set CDC up for failure" in the Zoning-Board-approval process by: (1) denying the "requested zoning change" to allow office use of the Gatehouse; (2) refusing to sign CDC's zoning-appeal application for a Multi-Purpose-Center use permit; (3) refusing to modify the lease to allow Multi-Purpose-Center use; and (4) refusing to grant CDC a "right of entry" to continue using the Gatehouse as an office through the Parks Department.

i.  The Zoning Board's Disapproval

CDC's allegation that the City breached its implied duty of good faith when the Zoning Board refused to approve CDC's use of the Gatehouse for office space indicates a misconception that the City has the power to predetermine the Zoning Board's approval of a proposed use by contract.

The City's zoning powers are derived from Maryland's Enabling Act, Md. Ann. Code art. 66B, and not from the City's charter.  *Scrivner v. Mayor and City Council of Balt.,* 191 Md. 165, 169 (1948).  Pursuant to Article 66B § 2.08, the City has delegated to the Zoning Board its power to authorize "special exceptions" to the terms of a zoning ordinance, also known as permits for "conditional use."  Md. Ann. Code art. 66B § 2.08(a)(1), (c)(1); *Mayor and Council of Rockville v. Rylyns Enterprises, Inc.,* 372 Md. 514, 542 n.1 (2002) (the "terms 'special exception' and 'conditional use' are synonymous").  A conditional use is one explicitly stated by the controlling ordinance that may be allowed in addition to the use generally permitted in the zone if "specific statutory standards assuring compatibility are met by the applicant at the time separate approval of the use is sought."  *Id.* at 541.

Although the Zoning Board is an administrative agency of the City, it "acts in a quasi judicial capacity in that it hears facts and makes decisions based thereon."  *Heath v. Mayor and*

8

*City Council of Balt.,* 187 Md. 296, 303 (1946).  "In the exercise
of its discretion in allowing a special exception or variance,
the [Zoning Board] must act in conformity with the rules of
conduct prescribed by the Legislature or by the City Council
acting with the sanction of the Legislature."  *Id*. at 303-04.
Just as the general requirement for rigid uniformity within each
zone protects "the right to fair and equal treatment of the
landowners at the hands of the local zoning authority," the
procedural requirements for conditional use permits and other
exceptions to the uniform application of zoning laws protect
those mechanisms for desired flexibility from abuse.  *Rylyns,* 372
Md. at 536-37.

     Although a municipal agency that does not "wield the final
zoning authority" may enter into a binding agreement to support a
applicant's request for Zoning Board approval, a contract between
the ultimate zoning authority and a zoning applicant to alter
legislatively determined zoning requirements "is impermissible
because it allows a property owner to obtain a special privilege
not available to others, disrupts the comprehensive nature of the
zoning plan, and, most importantly, impermissibly derogates the
exercise of the municipality's powers".  *Id*. at 547.  Thus the
process by which the Zoning Board must exercise its discretion to
grant exceptions may not be vitiated by the City's advance
approval by contract.  *Attman/Glazer P.B. Co. v. Mayor and*

9

*Aldermen of Annapolis*, 314 Md. 675, 683-684 (1989).  As the Court

of Appeals stated in *Attman/Glazer*:

> Just as the zoning authority is required to follow
> procedures mandated by statute, and to exercise its
> unconstrained independent judgment in deciding matters of
> reclassification, so too must the appropriate authority,
> whether the zoning authority or a duly authorized board of
> appeals, follow required procedures and exercise independent
> judgment in deciding requests for special exceptions,
> conditional uses, or variances.  The carefully structured
> provisions for public notice, public hearings, and, in many
> cases, required consideration of staff or planning
> commission recommendations, would be stripped of all meaning
> and purpose if the decision-making body had previously bound
> itself to reach a specific result.

*Attman/Glazer*, 314 Md. at 687.

Because "a municipality may not contract away the exercise

of its zoning powers," any agreement by the City that would

require Zoning Board approval of a conditional use permit would

be invalid.  *Id*. at 683-684.  Thus the City could have no duty

under the Lease, express or implied, to ensure the Zoning Board's

approval of the Gatehouse for office use.


ii.  CDC's Other Allegations of Bad Faith

CDC's remaining allegations, even if true, do not amount to

conduct that "operates to hinder or prevent performance of the

[Lease's] condition" that CDC obtain Zoning Board approval.

*Alois,* 219 Md. at 375.

First, the City's refusal to sign CDC's zoning-appeal

application for a Multi-Purpose-Center use permit did not hinder

10

CDC from gaining the Zoning Board's approval of the property's
use "as office space."  Lease § 2(C).  At some point in early
2004, the Zoning Board declared that "office space" use of the
Gatehouse was impermissible, and that the only conditional use
permitted in the Gatehouse's R-5 residential zone was as a Multi-
Purpose Center.  Resp. 12.  Although CDC still intended to use
the Gatehouse as its company headquarters once the project was
completed, it decided to seek approval from the Zoning Board for
conditional use of the Gatehouse as a Multi-Purpose Center.
Resp. 14.  CDC concludes that the City's refusal to endorse this
scheme frustrated the performance of CDC's duty under the Lease.

     If the City had an implied duty to support CDC's efforts to
obtain Zoning Board approval, it was only required to do so for
the use it allowed in the Lease.  The Zoning Board's refusal to
approve the Gatehouse for office use did not modify the Lease to
require the City to support an ostensible alternate use that it
had not agreed to permit, even if CDC's purpose may have been to
circumvent the zoning code's requirements to achieve the parties'
mutual goal of office use.

     Second, the City's subsequent refusal to modify the Lease to
permit CDC's supposed Multi-Purpose-Center use of the Gatehouse
cannot be construed as preventing CDC's performance of its
obligation under the Lease.  The implied covenant of good faith
and fair dealing does not extend so far as to require one party

to change the terms of a contract just to make it easier for the other to perform a condition of the bargain.

Third, allowing the Parks Department to grant CDC a right-of-entry agreement as a "suitable alternative means" to obtaining Zoning Board approval would not have enabled CDC to fulfill its obligation to obtain Zoning Board approval under § 4(E) of the Lease.  CDC's request that the City do so, although possibly a well-meant attempt for compromise, was merely another offer for a modification of the terms of the Lease, which the City had no obligation to accept.  The duty of good faith and fair dealing "does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]." *Parker,* 91 Md. App. at 366.


b.  The Lease's Default Provisions

Lastly, CDC alleges that the City violated the default provisions of the Lease when it notified CDC that the Lease was terminated in an August 29, 2005 letter.  Compl. Ex. 26.  CDC argues that the City never gave CDC the proper notice or opportunity to cure its default as required by Lease § 17.  It also contends that it is not in default if it is prevented from curing by "lawful interference by any municipal . . . official or agency."  Lease § 17.

In Maryland, the interpretation of a contract is a question

of law for the court.  *Walton v. Mariner Health of Maryland, Inc.,* 391 Md. 643, 660 (2006).  "Maryland courts follow the law of objective interpretation of contracts, giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean."  *Towson U. v. Conte* 384 Md. 68, 78 (2004).  A court must "attempt to construe [a] contract[] as a whole, to interpret [its] separate provisions harmoniously, so that, if possible, all of them may be given effect."  *Walker v. Dep't of Human Resources,* 379 Md. 407, 421 (2004).

The Court does not construe the notice and opportunity-to-cure provisions in § 17 to apply to CDC's failure to fulfill the conditions for the Lease's continuation in § 4.  CDC's failure to obtain Zoning Board approval was not a "default," such as a failure to pay rent or the breach of some other covenant; CDC had no duty to fulfil any of the conditions for the continuation of the Lease.  The City's August 29 letter notifying CDC that the Lease was "terminated" merely acknowledged that the Lease had expired by its own terms on August 21, not by default, but because the conditions for extension had not been met.

CDC has failed to allege facts to support its claim against the City for breach of contract.  The Lease expired after the Initial Term because a necessary condition for its continuation, Zoning Board approval, was not met.  CDC's allegations, even if

13

true, do not support its arguments that its failure to gain
Zoning Board approval was caused by the City's bad faith, or that
it was not given the required notice and opportunity to cure
under the Lease.  Accordingly, Count I will be dismissed.


2.   Fraud in the Inducement, Fraud by Concealment, & Negligent
     Misrepresentation (Counts IV, V, & VI)

     Although the City moves to dismiss the entire Amended
Complaint, it does not specifically challenge CDC's fraud and
negligent misrepresentation claims in its motion or accompanying
memorandum.  In an effort to salvage its challenge to Counts IV,
V, and VI, the City introduces new arguments in its Reply
contesting CDC's reliance on any statements or promises made by
the City.  Reply 9-12.

     Although federal courts may assess arguments raised for the
first time in a reply brief or memorandum in appropriate
circumstances, ordinarily such consideration is declined because
the opponent is prejudiced by the lack of an opportunity to
respond.  *Clawson v. FedEx Ground Package System, Inc.,* 451 F.
Supp. 2d 731, 734-35 (D. Md. 2006) (*citing U. S. v. Williams*, 445
F.3d 724, 736 n.6 (4th Cir. 2006).  Local Rule 105.2 provides for
parties to file surreply memoranda only upon leave of the Court,
which CDC has not requested.

     Not requesting leave to file a surreply should not prejudice

14

CDC against the City's belated arguments on CDC's fraud and negligent misrepresentation claims, which could and should have been raised in its motion and supporting memorandum.[2]  Without an opportunity to consider CDC's counter-arguments, it would be inappropriate for the Court to evaluate the City's arguments for judgment or dismissal on Counts IV, V, or VI at this time. Accordingly, the City's motion on Counts IV, V, and VI will be denied.

3.  Unjust Enrichment & Promissory Estoppel (Counts II & III)

The City argues that CDC's unjust-enrichment and promissory-estoppel claims fail because the subject matter of those quasi-contractual remedies is covered by the Lease.

Quasi-contracts, also called contracts implied by law, are "obligations created by law for reasons of justice" that "'permit recovery by contractual remedy in cases where, in fact, there is no contract.'"  *County Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94-95 (2000) (*quoting Black's Law Dictionary* 324 (6th ed. 1990)).  "The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests."  *Id*. at 96.  Courts only allow

---

[2] The City's initial memorandum contained only two and a half pages of legal argument; its Reply has ten.

quasi-contractual claims "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual recission of the contract, when recission is warranted, or when the express contract does not fully address a subject matter." *Id*. at 100.

CDC's allegations of fraud and negligent misrepresentation, if true, may provide grounds for rescission of the Lease. *Shulton, Inc. v. Rubin*, 239 Md. 669, 686, (1965); *Hale v. Hale*; 66 Md. App. 228, 233 (Md. Ct. Spec. App. 1986). As CDC's fraud and negligent-misrepresentation claims remain, its quasi-contractual claims may yet provide a remedy. Accordingly, the City's motion on Counts II and III will be denied.

III.  Conclusion

For the reasons stated above, the City's motion will be granted on Count I and denied on Counts II-VI.

January 29, 2007                              /s/
Date                                 William D. Quarles, Jr.
                                     United States District Judge

16