```
              IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |
|---|---|
| CDC-LCGH, LLC, | * |
|     Plaintiff, | * |
| v. | *    CIVIL NO.: WDQ-06-2235 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * |
|     Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

CDC-LCGH, LLC ("CDC"), has sued the Mayor and City Council of Baltimore (the "City") for breach of contract, unjust enrichment, promissory estoppel, fraud in the inducement, fraud by concealment, and negligent misrepresentation. Pending are CDC's motions for reconsideration of the Court's January 29, 2007 Order dismissing its breach-of-contract claim (Paper No. 14, the "Order") and for default judgment, and the City's motion for leave to file an answer. For the following reasons, CDC's motions will be denied, and the City's motion will be granted.

I. Background

The relevant background is described in the Court's January 29, 2006 Memorandum Opinion (Paper No. 13, the "Opinion").

1

II.  CDC's Motion for Reconsideration

Count I of CDC's Amended Complaint (Paper No. 4) claims that the City breached its August 21, 2002 lease (Compl. Ex. 1, the "Lease") with CDC for the company's use of the Gatehouse, an historic City-owned building located at 2803 St. Lo Drive in Baltimore City's Clifton Park.

On October 24, 2006, the City moved to dismiss the Complaint, arguing that CDC failed to state a claim upon which relief can be granted.  Paper No. 6.  For reasons discussed in the accompanying Opinion, the Court's Order granted the City's motion to dismiss Count I for failure to state a claim under Rule 12(b)(6), but denied the motion on CDC's remaining counts.

CDC contends that the Court should reconsider its dismissal of CDC's breach-of-contract claim because:

(1) the legal impossibility of gaining approval by the City's Board of Municipal and Zoning Appeals (the "Zoning Board") for office use of the Gatehouse excuses CDC's failure to gain Zoning Board approval as a condition for extension of the Lease;

(2) the City breached a warranty that office use of the Gatehouse was appropriate under the City's Zoning Code; and

(3) the City's Department of Recreation and Parks (the "Parks Department"), and not the Zoning Board, has the

2

> authority to determine the use of the Gatehouse, thus the Lease's condition of Zoning Board approval is unnecessary.

A.  Standard of Review

As CDC's motion for reconsideration was filed within ten business days of the Court's Order, the Court will treat it as one to alter or amend judgment under Federal Rule of Civil Procedure ("Rule") 59(e).  *Small v. Hunt,* 98 F.3d 789, 797 (4th Cir. 1996).

Rule 59(e) "was adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment."  *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 450 (1982) (quoting the Advisory Committee Note to the 1946 amendment of Rule 59).  "[T]he federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits."  *Id*. at 451.

"A district court has the discretion to grant a Rule 59(e) motion only in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (internal quotation marks omitted).

B.   Discussion

1.   Impossibility of Performance

CDC argues that Zoning Board approval of the Gatehouse for office use was never legally possible and, because CDC was "justifiably ignorant" of this legal impossibility, the condition of Zoning Board approval for extension of the Lease is excused as a matter of law.  Pl.'s Mem. in Supp. of Mot. for Recons. 11.

CDC seeks to apply a Maryland contract-law doctrine excusing a party's performance of a promise to excuse the non-occurrence of a condition precedent, the requirement that it obtain Zoning Board approval for the Lease to extend beyond its initial three-year term.  Lease ¶¶ 4(E), 4(J).  A thorough review of Maryland case law shows that the impossibility-of-performance doctrine has only been applied to excuse a promisor's failure to perform an obligation, and then only if the impossibility was not foreseeable at the time the contract was executed and was not a risk assumed by the promisor.  *Acme Moving and Storage Corporation v. Bower*, 269 Md. 478, 483 (1973).  The Court finds no binding authority applying the doctrine of impossibility to excuse the non-occurrence of a condition precedent.

The Maryland contract-law cases cited by CDC only support the use of the doctrine as an excuse for a promisor's failure to perform.  In *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337 (1974), the court excused the performance of an employer under an

4

employment contract's automatic extension clause that was "nugatory" because its was subject to an impossible condition. *Id*. at 353, 356. In *Acme Moving and Storage Corporation*, the court excused a landlord from specific performance under a lease conditioned on a use permit that proved impossible to obtain. 269 Md. at 484-85.

The other two Maryland cases cited by CDC, *Home for Incurables of Baltimore City v. University of Maryland Medical System Corporation*, 369 Md. 67 (2002), and *Muffoletto v. Melick*, 72 Md. App. 551 (Md. Ct. Spec. App. 1987), demonstrate the court's power to excuse the satisfaction of illegal or impossible conditions precedent to bequests, and are inapposite to the question of contract law raised by CDC's motion.

CDC's digression into the Restatement (Second) of Contracts's (the "Restatement") doctrines of impracticability of performance and frustration of purpose does not lend support to its interpretation of Maryland's doctrine of impossibility of performance. CDC fails to cite the most relevant section of the Restatement, § 271, which provides that "[i]mpracticability excuses the non-occurrence of a condition if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result." Neither § 271 nor its predecessor, Restatement (First) of Contracts § 301, is cited in Maryland case law, and the Court finds no merit in CDC's argument

5

under the Restatement.

2. Breach of Warranty

CDC next argues that the City warranted the Gatehouse could be used as office space pursuant to § 2-505 of the City's Zoning Code.

Section 2-505 provides in part that a person who fails to provide a transfer certificate to a transferee of an interest in or right to real property under § 2-503 "is conclusively presumed to have represented and warranted that the property involved in the transaction *is being used* in compliance with [the Zoning Code] at and immediately preceding the time the agreement of sale or instrument of conveyance is executed." Zoning Code of Balt. City § 2-505 (November 20, 2006) (emphasis added).

CDC argues that because "use" is defined in Zoning Code § 1-196 as including "any activity . . . that is carried on or *intended to be carried on* in a building," and office-space was an intended use under the Lease at the time of conveyance, the City warranted that use of the Gatehouse as office space complied with the Zoning Code. Zoning Code of Balt. City § 1-196 (November 20, 2006) (emphasis added).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake*

6

*Park*, 392 Md. 301, 316 (2006).  "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, [the court] will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261 (1994).  The court must "avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake v. State*, 395 Md. 213, 224 (2006).

Assuming, without finding, that (1) the transfer certificate requirement in § 2-503 applies, and (2) the City is not immune from liability under § 2-507,[1] CDC's breach-of warranty argument fails because the language of § 2-505 does not provide a presumptive warranty for intended activities.  The Zoning Code's definition of the noun "use" in § 1-196 cannot correctly or coherently be applied to the verb form "is being used" in § 2-505.  Although the words share the same root, they are different terms, and the verb form is limited to its normal present-tense indicative meaning.  The drafters of the Zoning Code had both terms at their disposal, and rather than providing a warranty

---

[1] Section 2-507 provides:
Neither the Mayor and City Council of Baltimore, the Zoning Administrator, nor any of their officers, agents, or employees may be held liable to any person, under any circumstances, in connection with or resulting from the issuance of any transfer certificate or in connection with or resulting from any information or statement contained in any transfer certificate.
Zoning Code of Balt. City § 2-507 (November 20, 2006).

that the "property's use is in compliance," the drafters required a warranty that the "property . . . is being used in compliance" with the Zoning Code "at and immediately preceding the time" of conveyance.

Thus, the City's alleged presumptive warranty under § 2-505 would only cover the actual use of the Gatehouse at and immediately before the time of conveyance, which was, as CDC indicates, as a "former municipal pumping station."  Pl.'s Reply to Def.'s Opp'n to Recons. 20.

3.  The Power of the Parks Department

Finally, CDC argues that Article VII, § 67 of the City's Charter grants the Parks Department "supreme power over park property," "the Zoning Board lacks the authority to adjudicate how *recreational buildings* like the Gatehouse may be used," and thus the Lease's condition of Zoning Board approval is an unnecessary provision.  Pl.'s Reply to Def.'s Opp'n to Recons. 20, 22.

This argument does not provide a legal basis for excusing the condition of Zoning Board approval for the Lease's extension. CDC argues alternatively that if the condition is not excused, then the City has a good-faith obligation to pursue alternatives to Zoning Board approval.  The Court's rejection of this application of the implied duty of good faith and fair dealing is

stated on page 12 of its Opinion.

CDC's arguments fail to provide a legal basis for resurrecting its breach-of-contract claim.  Accordingly, its motion for reconsideration will be denied.

III.  The City's Motion for Leave to File an Answer

The City seeks the Court's retroactive permission for its filing of its Answer on February 16, four days after it was due.[2]

Under Rule 6(b), the district court has discretion to grant an enlargement of time "for cause shown . . . upon motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect."  Fed. R. Civ. P. 6(b); *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006). In defining "excusable neglect" under Federal Bankruptcy Rule 9006(b)(1), which is nearly verbatim of Rule 6(b), the Supreme Court instructed that "neglect" includes "inadvertence, mistake, or carelessness," and the determination of whether such neglect is excusable

> is at bottom an equitable one, taking account of all relevant circumstances . . . includ[ing] . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant

---

[2] The parties state that the Answer was due on February 8.  However, Rule 6(a) excludes intermediate Saturdays, Sundays, and legal holidays from the computation of periods less than eleven days. Fed. R. Civ. P. 6(a).  Under Rule 6(a), the 10 days required for a responsive pleading under Rule 12(4)(a) expired on February 12, 2007.

9

<a>

</a>

<s>

</s>

acted in good faith.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388-89 (1993).

The City's counsel admits that he mistakenly believed the pending motion for reconsideration tolled the City's obligation to file its Answer.  Upon receiving notice of CDC's motion for default judgment on February 16, the City promptly filed its Answer by the end of the same day.  As there is no evidence of the City's bad faith, prejudice to CDC, or that the four-day delay has significantly impacted these proceedings, the motion for enlargement of time will be granted.


IV.  CDC's Motion for Declaratory Judgment

CDC seeks default judgment under Rule 55(b)(2) for the City's failure to timely file an Answer.

Before the court may grant a default judgment under Rule 55(b), there must be an entry of default under Rule 55(a).  *E.g.*, *Johnson v. Dayton Elec. Mfg. Co.*,  140 F.3d 781, 783 (8th Cir. 1998) (*citing* 10 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2682 (2d ed. 1983)). Rule 55(a) states:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

Fed. R. Civ. P. 55(a).  The power granted to the clerk under Rule 55(a) does not limit the court's discretion to enter default where a plaintiff seeks default judgment without first having obtained an entry of default.  *Trevino v. D.H. Kim Enterprises*, Inc., 168 F.R.D. 181, 183 n.3 (D. Md. 1996) (*citing Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982)).

CDC made no request for an entry of default prior to or with its motion for default judgment under Rule 55(b) on February 16.  As the Court will permit the City's belated filing on that same date, there is no justification for an entry of default for a failure to plead under Rule 55(a).  Accordingly, CDC's motion for default judgment will be denied.

V. Conclusion

For the reasons stated above, CDC's motions for reconsideration and default judgment will be denied, and the City's motion for leave to file an answer will be granted.


April 23, 2007                         /s/
Date                           William D. Quarles, Jr.
                               United States District Judge

11